# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA ROSI, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>ACLARIS THERAPEUTICS, INC., NEAL WALKER, and FRANK RUFFO,<br><br>                              Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Linda Rosi ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Aclaris Therapeutics, Inc. ("Aclaris" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Aclaris; and (c) review of other publicly available information concerning Aclaris.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Aclaris securities between May 8, 2018 and June 20, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Aclaris is a biopharmaceutical company that identifies, develops, and commercializes therapies to address unmet needs in medical and aesthetic dermatology and immunology. Its lead product ESKATA is a hydrogen peroxide topical solution to treat raised seborrheic keratosis, a common non-malignant tumor.

3.      On June 20, 2019, the U.S. Food & Drug Administration ("FDA") stated that an advertisement for ESKATA, "makes false or misleading claims" regarding the product's risk and efficacy. Specifically, "a direct-to-consumer video of an interview featuring a paid Aclaris spokesperson" was "especially concerning . . . because it fails to include information regarding the serious risks associated with ESKATA, which bears warnings and precautions related to the risks of serious eye disorders . . . in the case of exposure to the eye and severe skin reactions including scarring."

4.      On this news, the Company's share price fell $0.57 per share, or over 11%, over two consecutive trading sessions to close at $4.54 per share on June 21, 2019, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's advertising materials minimized the risks and overstated the efficacy of ESKATA to generate sales; (2) that, as a result, the Company was reasonably likely to face regulatory scrutiny; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.      Plaintiff Linda Rosi, as set forth in the accompanying certification, incorporated

by reference herein, purchased Aclaris securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant Aclaris is incorporated under the laws of Delaware with its principal executive offices located in Wayne, Pennsylvania.  Aclaris' shares trades on the NASDAQ exchange under the symbol "ACRS."

13.    Defendant Neal Walker ("Walker") was the President and Chief Executive Officer of the Company at all relevant times.

14.    Defendant Frank Ruffo ("Ruffo") was the Chief Financial Officer of the Company at all relevant times.

15.    Defendants Walker and Ruffo, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.    Aclaris is a biopharmaceutical company that identifies, develops, and commercializes therapies to address unmet needs in medical and aesthetic dermatology and immunology. Its lead product ESKATA is a hydrogen peroxide topical solution that is FDA-approved to treat raised seborrheic keratosis, a common non-malignant tumor.

## Materially False and Misleading
## Statements Issued During the Class Period

17.    The Class Period begins on May 8, 2018. On that day, the Company announced

its first quarter 2018 financial results in a press release that stated, in relevant part:

> "The first quarter of 2018 was a busy one as we prepared for the launch of
> ESKATA™ (hydrogen peroxide) Topical Solution, 40% (w/w), the first and only
> FDA-approved topical treatment for raised seborrheic keratosis (SK). We held the
> ESKATA Launch Meeting last week, and ESKATA is now officially available for
> physicians and their patients," said Brett Fair, Chief Commercial Officer of
> Aclaris.

> \* \* \*

> **First Quarter 2018  Financial Results**

> ▪  Net loss was $30.2 million for the first quarter of 2018, compared to $12.6
>    million for the first quarter of 2017.

> ▪  Revenue of $1.1 million and cost of revenue of $1.0 million for the first
>    quarter of 2018 related to Aclaris's contract research business acquired in
>    August 2017.

18.    The same day, the Company filed its quarterly report on Form 10-Q with the SEC

for the period ended March 31, 2018, which affirmed the previously reported financial results.

The report stated that the Company's risk factors "have not changed materially" from those

described in the Company's annual report for fiscal 2017 (the "2017 10-K"), which was filed

with the SEC on March 12, 2018. Under "Risks Related to Regulatory Approval of Our Drug

Candidates and Other Legal Compliance Matters," the 2017 10-K stated, in relevant part:

> ***ESKATA, or any drug candidate for which we obtain marketing approval, could
> be subject to post-marketing restrictions or recall or withdrawal from the
> market, and we may be subject to penalties if we fail to comply with regulatory
> requirements or if we experience unanticipated problems with our drug
> candidates, when and if any of them are approved.***

> ESKATA, or any drug candidate for which we obtain marketing approval, along
> with the manufacturing processes, post-approval clinical data, labeling,
> advertising and promotional activities for such drug candidate, will be subject to
> continual requirements of and review by the FDA and other regulatory authorities.
> These requirements include submissions of safety and other post-marketing
> information and reports, registration and listing requirements, cGMP requirements
> relating to manufacturing, quality control, quality assurance and corresponding
> maintenance of records and documents, requirements regarding the distribution of

samples to physicians and recordkeeping. ***Even if marketing approval of a drug candidate is granted, the approval may be subject to limitations on the indicated uses for which the drug candidate may be marketed or to the conditions of approval, including the requirement to implement a risk evaluation and mitigation strategy.*** If any of our drug candidates receives marketing approval, the accompanying label may limit the approved use of our drug, which could limit sales of the drug.

The FDA may also impose requirements for costly post-marketing studies or clinical trials and surveillance to monitor the safety or efficacy of the drug. The FDA closely regulates the post-approval marketing and promotion of drugs to ensure drugs are marketed only for the approved indications and in accordance with the provisions of the approved labeling. ***The FDA imposes stringent restrictions on manufacturers' communications regarding off-label use and if we do not market our drugs for their approved indications, we may be subject to enforcement action for off-label marketing.*** Violations of the Federal Food, Drug, and Cosmetic Act relating to the promotion of prescription drugs may lead to investigations alleging violations of federal and state healthcare fraud and abuse laws, as well as state consumer protection laws.

(Emphases added.)

19.    On August 3, 2018, the Company announced its second quarter 2018 financial results in a press release that stated, in relevant part:

"The second quarter represents an important milestone with the launch of ESKATA. This is an exciting time for Aclaris as we establish ourselves as a fully integrated commercial organization with a robust clinical-stage pipeline and drug discovery engine," said Dr. Neal Walker, President and Chief Executive Officer of Aclaris.

**Commercial Update:**

Sales Force Activity:

- Sales force focused on driving clinical and business integration in ESKATA accounts; ongoing in-service programs to support successful training and product integration.

- Over 800 ESKATA accounts opened to date

- Over 40 ESKATA peer-to-peer speaker programs conducted to date

* * *

**Financial Highlights**

***Second Quarter 2018  Financial Results***

- For the quarter ended June 30, 2018, total net revenues were $3.7 million, which consisted of ESKATA sales of $1.5 million, contract research revenues of $1.1 million, and other revenue of $1.0 million. . . .

* * *

- For the quarter ended June 30, 2018, net loss was $31.2 million, or $1.01 per basic and diluted share, as compared to $14.8 million, or $0.56 per basic and diluted share, for the second quarter of 2017. . . .

20.    The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, which affirmed the previously reported financial results. The report stated that the Company's risk factors "have not changed materially" from those described in the 2017 10-K.

21.    On November 6, 2018, the Company announced its third quarter 2018 financial results in a press release, reporting $1.6 million total revenue, which included $0.5 million net sales of ESKATA, and $32.7 million net loss.

22.    The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018, which affirmed the previously reported financial results. The report stated that the Company's risk factors "have not changed materially" from those described in the 2017 10-K.

23.    On March 18, 2019, the Company announced its fourth quarter and full year 2018 financial results in a press release, reporting $10.1 million total revenue, which included $2.8 million net sales of ESKATA, and $132.7 million net loss for fiscal 2018.

24.    The same day, the Company filed its annual report on Form 10-K with the SEC for the period ended December 31, 2018 (the "2018 10-K"), which affirmed the previously reported financial results. Moreover, regarding marketing of drugs, the report stated, in relevant part:

> Drugs manufactured or distributed pursuant to FDA approvals are subject to pervasive and continuing regulation by the FDA and other governmental agencies, including, among other things, requirements relating to recordkeeping, periodic reporting, product sampling and distribution, advertising and promotion and reporting of adverse experiences with the product. Once an approval is granted, the FDA may withdraw the approval if compliance with regulatory

requirements is not maintained or if problems occur after the product reaches the market.

* * *

The FDA strictly regulates the marketing, labeling, advertising and promotion of drug products that are placed on the market. Drugs may be promoted only for the approved indications and in accordance with the provisions of the approved label. However, companies may share truthful and not misleading information that is otherwise consistent with the product's FDA approved labeling. The FDA and other agencies actively enforce the laws and regulations prohibiting the promotion of off-label uses, and a company that is found to have improperly promoted off-label uses may be subject to significant liability.

25.    Moreover, under "Risks Related to Regulatory Approval of Our Drug Candidates and Other Legal Compliance Matters," the 2018 10-K stated, in relevant part:

> ***ESKATA, RHOFADE or any drug candidate for which we obtain marketing approval, could be subject to post-marketing restrictions or recall or withdrawal from the market, and we may be subject to penalties if we fail to comply with regulatory requirements or if we experience unanticipated problems with our drug candidates, when and if any of them are approved.***
>
>
> ESKATA, RHOFADE or any drug candidate for which we obtain marketing approval, along with the manufacturing processes, post-approval clinical data, labeling, advertising and promotional activities for such drug candidate, will be subject to continual requirements of and review by the FDA and other regulatory authorities. These requirements include submissions of safety and other post-marketing information and reports, registration and listing requirements, cGMP requirements relating to manufacturing, quality control, quality assurance and corresponding maintenance of records and documents, requirements regarding the distribution of samples to physicians and recordkeeping. ***Even if marketing approval of a drug candidate is granted, the approval may be subject to limitations on the indicated uses for which the drug candidate may be marketed or to the conditions of approval, including the requirement to implement a risk evaluation and mitigation strategy.*** If any of our drug candidates receives marketing approval, the accompanying label may limit the approved use of our drug, which could limit sales of the drug.
>
> The FDA may also impose requirements for costly post-marketing studies or clinical trials and surveillance to monitor the safety or efficacy of the drug. The FDA closely regulates the post-approval marketing and promotion of drugs to ensure drugs are marketed only for the approved indications and in accordance with the provisions of the approved labeling. ***The FDA imposes stringent restrictions on manufacturers' communications regarding off-label use and if we do not market our drugs for their approved indications, we may be subject to***

***enforcement action for off-label marketing.*** Violations of the FDCA relating to the promotion of prescription drugs may lead to investigations alleging violations of federal and state health care fraud and abuse laws, as well as state consumer protection laws.

(Emphases added.)

26.    On May 8, 2019, the Company announced its first quarter 2019 financial results in a press release, reporting $5.0 million total revenue, including $0.1 million of net sales of ESKATA, and $37.6 million net loss.

27.    The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2019, which affirmed the previously reported financial results. The report stated that the Company's risk factors "have not changed materially" from those described in the 2018 10-K.

28.    The above statements identified in ¶¶17-27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's advertising materials minimized the risks and overstated the efficacy of ESKATA to generate sales; (2) that, as a result, the Company was reasonably likely to face regulatory scrutiny; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## The Truth Begins to Emerge

29.    On June 20, 2019, a letter from the FDA's Office of Prescription Drug Promotion ("OPDP") was widely publicized. In the letter, the OPDP stated that an advertisement for Eskata "makes false or misleading claims" regarding the product's risk and efficacy. Specifically, "a direct-to-consumer video of an interview featuring a paid Aclaris spokesperson" was "especially concerning . . .  because it fails to include information regarding the serious risks associated with Eskata, which bears warnings and precautions related to the risks of serious eye disorders . . . in the case of exposure to the eye and severe skin reactions including scarring." Moreover, as to prior communications, the letter stated, in relevant part:

OPDP notes that our advisory comments dated March 29, 2018, addressed draft Aclaris presentations for Eskata with certain similarities to the video in this letter. In these advisory comments, OPDP recommended that Aclaris revise proposed presentations so that they did not omit material information regarding the risks associated with Eskata or otherwise misrepresent important risk information. We also recommended that Aclaris revise proposed presentations so that they did not overstate the efficacy of Eskata. We are concerned that Aclaris is promoting Eskata in a manner that fails to adequately present the serious risks of the drug or describe the efficacy of the drug in a truthful and non-misleading manner despite this direction from OPDP.

30.     On this news, the Company's share price fell $0.57 per share, or over 11%, over two consecutive trading sessions to close at $4.54 per share on June 21, 2019, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Aclaris securities between May 8, 2018 and June 20, 2019, inclusive, and who were damaged thereby (the "Class").   Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Aclaris' common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Aclaris common stock were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Aclaris or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of

federal law that is complained of herein.

34.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Aclaris; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

36.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

37.    The market for Aclaris' securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Aclaris' securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Aclaris' securities relying upon the integrity of the market price of the Company's securities and market information relating to Aclaris, and have been damaged thereby.

38.    During the Class Period, Defendants materially misled the investing public,

thereby inflating the price of Aclaris' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Aclaris' business, operations, and prospects as alleged herein.

39.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Aclaris' financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

40.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.    During the Class Period, Plaintiff and the Class purchased Aclaris' securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Aclaris, their control over, and/or receipt and/or modification of Aclaris' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Aclaris, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

43. The market for Aclaris' securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Aclaris' securities traded at artificially inflated prices during the Class Period. On July 11, 2018, the Company's share price closed at a Class Period high of $20.89 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Aclaris' securities and market information relating to Aclaris, and have been damaged thereby.

44. During the Class Period, the artificial inflation of Aclaris' shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Aclaris' business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Aclaris and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.     At all relevant times, the market for Aclaris' securities was an efficient market for the following reasons, among others:

(a)     Aclaris shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Aclaris filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Aclaris regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Aclaris was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

46.     As a result of the foregoing, the market for Aclaris' securities promptly digested current information regarding Aclaris from all publicly available sources and reflected such information in Aclaris' share price. Under these circumstances, all purchasers of Aclaris' securities during the Class Period suffered similar injury through their purchase of Aclaris' securities at artificially inflated prices and a presumption of reliance applies.

47.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set

forth above, that requirement is satisfied here.

## NO SAFE HARBOR

48.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Aclaris who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

49.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Aclaris' securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Aclaris' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Aclaris' financial well-being and prospects, as specified herein.

53.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Aclaris' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Aclaris and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the

Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Aclaris' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Aclaris' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Aclaris' securities during the Class Period at artificially high prices and were damaged thereby.

57.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Aclaris was experiencing, which were not disclosed by Defendants, Plaintiff and other

members of the Class would not have purchased or otherwise acquired their Aclaris securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61.     Individual Defendants acted as controlling persons of Aclaris within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Aclaris and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.


Dated: July 30, 2019          **GLANCY PRONGAY & MURRAY LLP**


By:   */s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

     -and-

Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Linda Rosi*

## SWORN CERTIFICATION OF PLAINTIFF
## ACLARIS THERAPEUTICS, INC. SECURITIES LITIGATION

I, Linda Rosi individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.     I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.     I did not purchase the Aclaris Therapeutics, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.     I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.     My transactions in Aclaris Therapeutics, Inc. securities during the Class Period set forth in the Complaint are as follows:

       (See attached transactions)

5.     I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.     I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

7/29/2019
_____
Date

DocuSigned by:
*Linda Rosi*
D90B20CB0CB049D...
_____
Linda Rosi

**Linda Rosi's Transactions in**
**Aclaris Therapeutics, Inc. (ACRS)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 06/12/2018 | Bought | 100 | $20.3600 |
| 07/10/2018 | Bought | 100 | $20.5700 |