UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LINDA ROSI, *individually and on behalf of all others similarly situated*,

                Plaintiff,

  -v.-

ALCARIS THERAPEUTICS, INC., NEAL WALKER, and FRANK RUFFO,

                Defendants.
-----------------------------------------------------------X
ROBERT FULCHER, *individually and on behalf of all others similarly situated*,

                Plaintiff,

  -v.-

ALCARIS THERAPEUTICS, INC., NEAL WALKER, and FRANK RUFFO,

                Defendants.
-----------------------------------------------------------X

**OPINION AND ORDER**

19-CV-7118 (LTS) (JLC)

19-CV-8284 (LTS) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

Plaintiffs Linda Rosi and Robert Fulcher filed separate securities fraud class actions earlier this year against Alcaris Therapeutics, Inc., its President and Chief Executive Officer Neal Walker, and its Chief Financial Officer Frank Ruffo, alleging that they violated Sections 10(b) and 20(a) of the Securities Exchange Act as well as Securities and Exchange Commission Rule 10b-5. Pending before the Court are motions by Rosi and Fulcher seeking (1) consolidation of their respective actions; (2) appointment as lead plaintiff; and (3) approval of lead counsel. For the reasons

1

explained below, Fulcher's motion is granted in its entirety and Rosi's motion is granted to the extent she seeks consolidation but is otherwise denied.[1]

## I. BACKGROUND

Plaintiff Linda Rosi filed suit on July 30, 2019 (*Rosi v. Alcaris Therapeutics, Inc. et al.*, No. 19-CV-7118 (LTS) (JLC)), and Plaintiff Robert Fulcher filed the second action on September 5, 2019 (*Fulcher v. Alcaris Therapeutics, Inc. et al*, No. 19-CV-8284 (LTS) (JLC)). Plaintiffs in both cases allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78(j)(b) and 78(t), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. *See* Rosi Complaint ("Rosi Compl."), No. 19-CV-7118, Dkt. No. 1, ¶¶ 49–63; Fulcher Complaint ("Fulcher Compl."), No. 19-CV-8284, Dkt. No. 1, ¶¶ 49–63. Each action is brought on behalf of all those who purchased or otherwise acquired Alcaris stock between May 8, 2018 and June 20, 2019, inclusive (the "Class Period"), and who purportedly incurred damages in connection with such purchases or acquisitions. *See* Rosi Compl. ¶ 1; Fulcher Compl. ¶ 1.

Plaintiffs allege that during the Class Period, Defendants made false and/or misleading statements and failed to disclose material adverse facts about the company's lead product ESKATA, which is a hydrogen peroxide topical solution used to treat raised seborrheic keratosis, a common non-malignant tumor. *See* Rosi

---

[1] These cases have been referred to me for general pretrial supervision. No. 19-CV-7118, Dkt. No. 5; No. 19-CV-8284, Dkt. No. 7.

Compl. ¶¶ 2–6; Fulcher Comp. ¶¶ 2–6. On June 20, 2019, the U.S. Food & Drug Administration stated that an advertisement for ESKATA "makes false or misleading claims" regarding the product's risk and efficacy. *Id.* ¶ 3. Specifically, "a direct-to-consumer video of an interview featuring a paid Alcaris spokesperson" was "especially concerning . . . because it fails to include information regarding the serious risks associated with ESKATA, which bears warnings and precautions related to the risks of serious eye disorders . . . in the case of exposure to the eye and severe skin reactions including scarring." *Id.* This news caused Alcaris's stock price to fall $0.57 per share, or more than 11%, over two consecutive trade sessions, to close at $4.54 per share on June 21, 2019 on unusually heavy trading volume. *Id.* ¶ 4. As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of Alcaris's stock, Plaintiffs claim that they and other class members have suffered significant losses and damages. *Id.* ¶ 6.

Only Rosi and Fulcher have filed motions requesting appointment as lead plaintiff and approval of lead counsel, in addition to requesting consolidation of their suits. *See* Rosi Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel, Dkt. No. 12; Memorandum of Law in Support of Rosi Motion ("Rosi Mem."), Dkt. No. 13; Declaration of Lesley F. Portnoy dated September 30, 2019 ("Portnoy Decl."), Dkt. No. 14; Fulcher Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel, Dkt. No. 8; Proposed Order Granting Fulcher Motion, Dkt. No. 9; Memorandum of Law in Support of Fulcher Motion ("Fulcher Mem."), Dkt. No. 10; Declaration of Jeremy

3

A. Lieberman dated September 30, 2019 ("Lieberman Decl."), Dkt. No. 11.[2] Specifically, Fulcher moves to be appointed as lead plaintiff and for approval of Pomerantz LLP as lead counsel, while Rosi moves to be appointed as lead plaintiff and for approval of Glancy Prongay & Murray LLP as lead counsel. *See* Rosi Mem. at 1; Fulcher Mem. at 1. In response to Fulcher's motion, Rosi filed a notice of non-opposition, acknowledging that she does not possess the largest financial interest in this action. *See* Rosi Notice of Non-Opposition, Dkt. No. 15.[3] Defendants have not taken a position on these motions.

## II. DISCUSSION

### A. Consolidation of the Related Actions

Both Fulcher and Rosi seek consolidation of *Rosi v. Alcaris Therapeutics, Inc. et al.*, No. 19-CV-7118 (LTS) (JLC), with *Fulcher v. Alcaris Therapeutics, Inc. et al*, No. 19-CV-8284 (LTS) (JLC). Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, a court may consolidate actions that involve common questions of law and fact. Fed. R. Civ. P. 42(a). "The trial court has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). In exercising that discretion, "courts have taken the view that considerations of judicial economy favor consolidation." *Id.* at 1285; *see also Jacobs*

---

[2] Unless otherwise stated, throughout this Opinion, all docket citations refer to the filings in 19-CV-7118.

[3] Fulcher also filed a notice of non-opposition, pointing to Rosi's non-opposition and thus stating that his motion is unopposed. *See* Fulcher Notice of Non-Opposition, Dkt. No. 16.

4

*v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) ("Consolidation would further the goal of 'judicial economy' because discovery in each case is likely to be identical, motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). However, "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Johnson*, 899 F.2d at 1285. Consolidation is generally appropriate so long as efficiency concerns are not outweighed by any prejudice or confusion. *Id.* In securities class actions, consolidation is "particularly appropriate where the actions 'are based on the same public statements and reports'" so long as there are "'common questions of law and fact and the defendant will not be prejudiced.'" *Martingano v. Am. Int'l Grp., Inc.*, Nos. 06-CV-1625 (JG) (JMA), 06-CV-2014 (JG) (JMA), 2006 WL 1912724, at *1 (E.D.N.Y. July 11, 2006) (internal citations omitted).

Consolidation is appropriate here. The actions assert "virtually identical claims based on virtually identical factual allegations." *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 118 (S.D.N.Y. 2010). Both complaints allege violations of the same federal securities laws based on the same set of facts. *See Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004) (consolidating securities class action cases where claims were "essentially similar and overlapping"). Moreover, neither Defendants nor any other party has objected to consolidation, suggesting that consolidation will not prejudice any party. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). Accordingly, the actions are hereby

consolidated for all purposes. All future filings in either case shall be filed under Docket Number 19-CV-7118, as it bears the lower docket number.

## B. Appointment of Lead Plaintiff

Fulcher and Rosi also seek appointment as lead plaintiff and approval of their respective selections as lead counsel. The Private Securities Litigation Reform Act of 1995 (the "PSLRA") governs the procedure for appointing a lead plaintiff in securities class actions. 15 U.S.C. § 78u-4(a)(3)(B). Pursuant to the PSLRA, courts must adopt a presumption that the most adequate plaintiff is the person or group of persons who (1) either filed the complaint or made a timely motion to be appointed lead plaintiff; (2) "has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. 78u-4(a)(3)(B)(iii)(I). "[O]ther members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of 'unique defenses.'" *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

### 1. Timeliness

First, "[n]ot later than 20 days" after the first complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported class "of the pendency of the action, the claims asserted therein, and the purported class period" and "not later

than 60 days after the date on which the notice is published, any member of the purported plaintiff class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. 78u-4(a)(3)(A)(i).  Rosi's complaint was the first filed complaint on July 30, 2019.  The same day, notice of that complaint was published in Business Wire, a widely-circulated national business-oriented wire service, fulfilling the PSLRA requirements set forth in 15 U.S.C. § 77z-1(a)(3)(A)(i).  *See* Portnoy Decl., Exh. A.  The notice advised class members of the pendency of the action, the alleged claims, the class definition, and the option of moving to be appointed as lead plaintiff by September 30, 2019.  *See id.*  Both Rosi and Fulcher moved for appointment as lead plaintiff on September 30, 2019, and thus timely filed within the 60-day statutory requirement.  Accordingly, both Rosi and Fulcher have satisfied the first prong of the PSLRA's requirements for appointment of lead plaintiff.

### 2. Largest Financial Interest

The PSLRA does not specify a method of calculating who has the "largest financial interest," but courts in this District commonly look to four factors in making this determination: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended by the plaintiff during the class period; and (4) the approximate losses suffered by the plaintiff." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) (citations omitted).  The fourth factor, the largest loss, is considered by most courts to be the "critical ingredient in determining the largest financial interest and outweighs net shares

7

purchased and net expenditures." *Richman v. Goldman Sachs Grp. Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011). Fulcher alleges $22,521 in losses. *See* Fulcher Mem. at 7; Lieberman Decl., Exh. A. Although Rosi does not state the amount of her losses, it appears that she suffered $ 3,761.35 in losses based on the total balance of her loss chart. *See* Rosi Mem. at 6-7; Portnoy Decl., Exh. C. Indeed, after reviewing Fulcher's submissions, Rosi stated that she does not oppose Fulcher's appointment, acknowledging that she does not possess the largest financial interest. No other plaintiff has come forward and demonstrated a larger financial stake. Therefore, I find that Fulcher satisfies the largest financial interest requirement of the PSLRA.

### 3. Rule 23 Requirements

A potential lead plaintiff must also "make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *In re eSpeed*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005). The Rule 23 analysis in the context of appointment of lead plaintiff "need not be as complete as would a similar determination for the purpose of class certification." *Id.* A party moving to be appointed lead plaintiff is only required to make a prima facie showing that he or she meets the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements. *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008); *Kaplan*, 240 F.R.D. at 94.

Typicality is satisfied when a movant's claims "arise from the same course of events, and the other class members make similar legal arguments to prove liability." *Helfenbein v. Altair Nanotechnologies, Inc.*, No. 14-CV-7828 (AT), 2015

8

WL 12912278, at *2 (S.D.N.Y. May 15, 2015). Fulcher's claims are identical to, and neither compete nor conflict with, the claims of other class members. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011) ("The typicality threshold is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise.") (citation omitted). Like all other class members, Fulcher purchased Alcaris securities during the Class Period, suffered damages as a result of Defendants' allegedly false and misleading statements, and seeks relief under the federal securities laws. Accordingly, I find that Fulcher alleges claims that are typical of the members of the class.

I also find that Fulcher satisfies Rule 23's adequacy requirement. "The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* First, as discussed more fully below, Fulcher's choice of counsel, Pomerantz LLP, has substantial experience litigating securities class actions and thus has the ability to conduct this litigation effectively. Second, Fulcher's claims are identical to those of the other class members, and there is no other identifiable conflict. Third, Fulcher's significant financial interest in the relief sought by the class will ensure vigorous advocacy on behalf of that class.

Accordingly, Fulcher has satisfied Rule 23's typicality and adequacy requirements for purposes of this stage of the litigation. As Fulcher has satisfied all

9

three prongs of the PSLRA's requirements for lead plaintiff, I find that he is presumptively the most adequate lead plaintiff. Because no other plaintiff has come forward with rebuttal evidence establishing that Fulcher "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), I appoint Fulcher as lead plaintiff.

## C. Appointment of Lead Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection." *Sallustro*, 93 F. Supp. 3d at 278 (internal quotation marks omitted).

Having reviewed the Firm Résumé of Pomerantz LLP, *see* Lieberman Decl., Exh. D, I find that Fulcher's chosen counsel will adequately and effectively represent the interests of the class. The attorneys at Pomerantz have extensive experience with securities class actions and have been found to be qualified to be lead or co-lead counsel by other courts. *See, e.g.*, *Workman v. Namaste Techs., Inc.*, No. 18-CV-10830 (GHW), 2019 WL 280948, at *3 (S.D.N.Y. Jan. 22, 2019) (collecting cases). Thus, I approve Fulcher's selection of Pomerantz as lead counsel.

## III. CONCLUSION

For the foregoing reasons, the Court grants Fulcher and Rosi's motions for consolidation, Fulcher's motion for appointment as lead plaintiff, and the motion for

approval of Pomerantz LLP as lead counsel, and denies Rosi's motion for appointment as lead plaintiff and for approval of Glancy Prongay & Murray LLP as lead counsel. All future filings shall be made under Docket Number 19-CV-7118.

The Clerk is directed to close Docket Numbers 8 and 12 and mark Docket No. 8 as granted, and Docket No. 12 as granted in part and denied in part. The Clerk is further directed to change the caption to reflect Fulcher as lead plaintiff.

Pursuant to paragraph 2 of the stipulation approved by the Court (Dkt. No. 7), within 10 days of this Opinion and Order, lead counsel shall meet and confer with counsel for Defendants for the purpose of jointly submitting a proposed schedule for the filing of a consolidated amended complaint by lead plaintiff, the filing of any motion to dismiss the amended complaint by Defendants, lead plaintiff's opposition to the motion to dismiss, and Defendants' reply.

**SO ORDERED.**

Dated: November 6, 2019
New York, New York

_____
JAMES L. COTT
United States Magistrate Judge