# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA ROSI, individually and on behalf of all others similarly situated, | ) Case No. 1:19-cv-7118 (LJL) |
| | ) |
| | ) <u>Class Action</u> |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ACLARIS THERAPEUTICS, INC., NEAL WALKER, FRANK RUFFO, KAMIL ALI-JACKSON, and BRETT FAIR, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**DECLARATION OF JEREMY A. LIEBERMAN IN SUPPORT OF LEAD PLAINTIFF'S (1) UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTAND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND (2) UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARD <u>TO LEAD PLAINTIFF</u>**

# TABLE OF CONTENTS

I.     SUMMARY OF LEAD PLAINTIFF'S CLAIMS ............................................................. 4

II.    PROCEDURAL HISTORY ..................................................................................................... 5

III.   THE SETTLEMENT ................................................................................................................ 8

       A.    Reasons for the Settlement ...................................................................................... 8

       B.    Settlement Terms ....................................................................................................... 11

IV.    THE COURT'S PRELIMINARY APPROVAL ORDER AND PLAINTIFF'S
       DISSEMINATION OF NOTICE .......................................................................................... 12

       A.    Preliminary Approval Order ................................................................................. 12

       B.    Notice ............................................................................................................................. 13

       C.    Reaction of the Class .............................................................................................. 15

       D.    The Plan of Allocation ............................................................................................ 15

V.     LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES
       AND REIMBURSMENT OF EXPENSES ........................................................................ 18

       A.    Attorneys' Fees ......................................................................................................... 18

       B.    Costs and Expenses ................................................................................................. 21

VI.    AN AWARD TO THE LEAD PLAINTIFF IS WARRANTED ................................... 22

I, Jeremy A. Lieberman, declare and state, under penalty of perjury, that the following is true and correct to the best of my knowledge, information, and belief:

1.    I am a partner at the Pomerantz LLP ("Pomerantz") law firm, court-appointed Lead Counsel on behalf of Lead Plaintiff Robert Fulcher ("Fulcher" or "Lead Plaintiff") in the class action styled as *Rosi v. Aclaris Therapeutics, Inc., et al.*, No. 1:19-cv-7118 (LJL) (S.D.N.Y.) (the "Action").[1]

2.    I am duly admitted to practice in New York and before this Court.  I have personal knowledge of the matters set forth herein and, if called upon, could and would competently testify thereto.

3.    I respectfully submit this Declaration ("Decl." or "Declaration") in support of the following: (1) Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (2) Lead Plaintiff's Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiff.  The terms of the Settlement are set forth in the Stipulation.  The Court preliminarily approved the Stipulation by its Order Preliminarily Approving Settlement and Providing for Notice, filed on the docket August 18, 2021.  (Dkt. No. 66, "Preliminary Approval Order").

4.    This Declaration sets forth the nature of the claims asserted, the Action's procedural history, and the methods by which the Settlement Class was notified of the Settlement.  It also demonstrates the reasons why the Settlement and Plan of Allocation are fair, reasonable, and adequate, and why Counsel's application for attorneys' fees, reimbursement of expenses, and an award for Lead Plaintiff should be approved.

---

[1] All capitalized terms that are not otherwise defined herein have the meanings provided in the Stipulation of Settlement, dated July 30, 2021 (Dkt. No. 62-1) ("Stipulation").  Unless indicated otherwise, "Dkt. No." references herein are to the *Rosi v. Aclaris Therapeutics, Inc., et al.*, No. 1:19-cv-7118-LJL (S.D.N.Y.), docket.

5.      The settlement contemplated by the Stipulation ("Settlement") provides for a payment of two million six hundred and fifty thousand U.S. dollars ($2,650,000.00) in cash in exchange for the release of all claims asserted by Lead Plaintiff against defendant Aclaris Therapeutics, Inc. ("Aclaris" or the "Company"), and defendants Neal Walker ("Walker"), Frank Ruffo, Kamil Ali-Jackson, and Brett Fair ("Fair") (collectively, the "Individual Defendants"; and, together with Aclaris, "Defendants") and completely resolves this Action.  While Lead Counsel believes that the allegations in the Amended Class Action Complaint (the "Complaint," Dkt. No. 27) have substantial merit, Lead Counsel respectfully submits that the Settlement represents an excellent result for the Class.

6.      The Settlement is the result of extensive arm's-length settlement negotiations among esteemed and experienced counsel.  Through an all-day mediation session with the assistance of Jed D. Melnick of JAMS acting as mediator, the Settling Parties vigorously debated the strengths and weaknesses of the claims and defenses in this Action.  The ability of Counsel to reach a compromise in light of the many complex issues present in this Action evidences the skill of representation and the quality of the results.

7.      Pursuant to the Preliminary Approval Order, 9,021 Notices of Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Forms ("Claim Form") (collectively, the "Notice Packet") were mailed to potential Settlement Class Members, brokers and other nominees, and the Notice Packet, the Preliminary Approval Order, and the Stipulation were posted online at www.strategicclaims.net. *See* Declaration of Sarah Evans Regarding: (A) Mailing of the Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received to Date, dated October 26, 2021 ("Evans Decl."), at ¶¶ 3–7, submitted as Exhibit ("Ex.") 1 hereto.  The Summary Notice of Pendency and

Proposed Settlement of Class Action and Final Approval Hearing ("Summary Notice") was posted in print in the national edition of *Investor's Business Daily* on September 20, 2021 and by wire on *GlobeNewswire* on September 20, 2020. Evans Decl., ¶ 10 and Ex. C.

8.      For approximately two years prior to the Settlement, Counsel have successfully overcome the significant obstacles that this Action presented and adeptly navigated the complicated issues of law and fact inherent in prosecuting this claim.  The Settlement provides an immediate and certain benefit to the Settlement Class, considering the significant risks that a smaller recovery—or, indeed, no recovery—might be achieved after motions for summary judgement, for class certification, and trial and the likely appeals that would follow, which could prolong the Action for years.  For these reasons and those set forth more fully below, Counsel respectfully submits that the Settlement is in the best interests of the Settlement Class and should be approved as fair, adequate, and reasonable.

9.      Counsel also respectfully requests that the Court approve the Plan of Allocation for the Settlement proceeds, the award of attorneys' fees in the amount of eight hundred and thirty-three thousand, three hundred and thirty-three U.S. dollars and thirty-three cents ($833,333.33) plus accrued interest, and reimbursement of expenses in the amount of $55,255.76 as fair and reasonable.  The fee award constitutes one-third (33.33%) of the Settlement Fund, which is within the range of attorneys' fees regularly awarded by courts within the Second Circuit and is reasonable in light of the relevant factors, including the quality of the representation, the complexity of the Action, and the Settlement Class's reaction to the fee request.  The expenses incurred were reasonable and necessary to prosecute this Action and to reach this favorable result for the Settlement Class.  Counsel also respectfully requests an award

of ten thousand U.S. dollars ($10,000.00) to Lead Plaintiff for his substantial efforts in leading the prosecution of the Action.

## I.     SUMMARY OF LEAD PLAINTIFF'S CLAIMS

10.     Lead Plaintiff's claims are set forth in the Complaint (Dkt. No. 27), which asserts claims against Defendants on behalf of Aclaris investors during the Class Period. Among other things, the Complaint alleged that Aclaris and the Individual Defendants violated Section 10(b) of the Exchange Act by making certain statements that Plaintiff alleges were false and misleading. The specific statements that Plaintiff identifies in the Complaint and alleges were false and misleading are, *inter alia*, (i) statements to investors that patients "enjoyed" the Company's first FDA-approved product, "ESKATA," found ESKATA "comfortable," and that the treatment "works" and "resolves well," (ii) disclosures of the results of "surveys" that allegedly misleadingly suggested that ESKATA was effective and tolerated well by patients, when in fact certain physicians and patients found the treatment painful and/or limited in effectiveness, (iii) alleged attribution of ESKATA's poor sales to the fact that patients needed fewer treatments than expected, (iv) statements touting the Company's direct-to-consumer advertising campaign ("DTC Campaign") while failing to disclose that the campaign allegedly was designed to mislead patients as to the risks and effectiveness of ESKATA in violation of the FFDCA, and (v) statements allegedly made misleading for failing to disclose the risk of regulatory action created by Defendants' violations of the Federal Food, Drug & Cosmetics Act ("FFDCA").

The Complaint alleges that investors learned the truth about Defendants' use of illegal advertising and violations of the FFDCA when the FDA announced that it had sent Aclaris an "Untitled Letter" in June 2019. The letter allegedly disclosed for the first time that the FDA had warned Defendants in March 2018, *over a year earlier* that the claims in ESKATA advertising

materials violated the FFDCA. In addition, the Untitled Letter indicated that Defendants had committed multiple violations of the FFDCA and that those violations were similar to issues identified by the FDA in March 2018. Defendants did not contest the substance of the Untitled Letter. The Complaint alleges that, on this news, the Company's share price fell $0.57 per share, or over 11%, over two consecutive trading sessions to close at $4.54 per share on June 21, 2019, on unusually heavy trading volume. A month later, on August 8, 2019, Defendants announced that they had abandoned the product. The Complaint further alleges that on this news, the Company's share price fell $0.15 per share, or over 14%, over two consecutive trading sessions to close at $0.84 per share on August 12, 2019, on unusually heavy trading volume.

11.    The Complaint charges that Defendants' conduct violated Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.    Defendants continue to deny the substance of the allegations in the Complaint and that they committed any acts or omissions giving rise to any liability and/or violation of the law.

## II.    PROCEDURAL HISTORY

13.    Following revelation of the FDA's Untitled Letter, Lead Counsel began a thorough investigation.  Among other investigative efforts, Lead Counsel reviewed and analyzed information regarding Aclaris's SEC filings, press releases, earnings calls, analyst reports, analyst presentations, share-price movements, and public statements, as well as information in news articles and other publications.

14.    On July 30, 2019, Linda Rosi ("Rosi") filed a securities class action complaint in the Southern District of New York ("S.D.N.Y.") against the Defendants, styled *Rosi v. Aclaris Therapeutics, Inc., et al*, No. 1:19-cv-07118 ("*Rosi* Action") (Dkt. No. 1).

15.     On September 5, 2019, Lead Plaintiff filed a second securities class action complaint in the S.D.N.Y. against the Defendants, styled *Fulcher v. Aclaris Therapeutics, Inc., et al*, No. 1:19-cv-08284 ("*Fulcher* Action") (*Fulcher* Action, Dkt. No. 1).

16.     On September 30, 2019, Lead Plaintiff filed a motion to consolidate the *Rosi* Action and the *Fulcher* Action, and to appoint Fulcher as Lead Plaintiff over the consolidated actions (Dkt. No. 8).

17.     Also on September 30, 2019, Rosi filed a motion to consolidate the *Rosi* Action and the *Fulcher* Action, and to appoint Rosi as Lead Plaintiff over the consolidated actions (Dkt. No. 12).

18.     On November 6, 2019, Magistrate Judge James L. Cott entered an Order consolidating the *Rosi* Action and the *Fulcher* Action, directing that all future filings be made on the *Rosi* Action docket, appointing Fulcher as Lead Plaintiff for the consolidated action, and approved Lead Plaintiff's selection of Pomerantz as Lead Counsel (Dkt. No. 17).

19.     On January 24, 2020, Lead Plaintiff filed and served the Complaint against Defendants (Dkt. No. 27).

20.     On April 17, 2020, Defendants moved to dismiss the Complaint. (Dkt. Nos. 36–38.)

21.     On June 15, 2020, Plaintiff opposed Defendants' motion to dismiss and moved to strike a document referenced in Defendants' motion. (Dkt. Nos. 44–45.)

22.     On August 4, 2020 Defendants filed a reply in further support of their motion to dismiss, and an opposition to Plaintiff's motion to strike. (Dkt. No. 46.)

23.     On August 11, 2021, Plaintiff filed a reply in further support of his motion to strike. (Dkt. No. 47.)

24.     On February 25, 2021, the Court held a telephonic hearing on Defendants' motion to dismiss and Plaintiff's motion to strike. (*See* Dkt. No. 49.)  At the hearing, the Settling Parties presented their respective arguments concerning Defendants' motion to dismiss.

25.     On March 29, 2021, the Court denied Defendants' motion to dismiss as to statements allegedly touting the DTC Campaign and the Individual Defendants' liability as control persons, granted the motion to dismiss as to all other statements, and denied Plaintiff's motion to strike as moot.

26.     On May 12, 2021, the Settling Parties and the Court participated in a pre-trial scheduling conference at which the Settling Parties informed the Court that they were planning to mediate.  After the conference, the Court entered a Case Management Plan and Scheduling Order for the Litigation.  (*See* Dkt. No. 55.)

27.     On June 4, 2021, the Settling Parties participated in an all-day mediation with the assistance of Jed D. Melnick of JAMS.  Prior to that session, the Settling Parties drafted and exchanged detailed mediation statements and exhibits, addressing issues of liability and damages.  During the mediation session, both sides debated the merits of Lead Plaintiff's claims and the defenses to those claims.  The negotiations, though collegial, were adversarial.  Lead Plaintiff, through Lead Counsel, consulted with a damages expert to evaluate recoverable losses and as part of the extensive damages analysis that was done for the settlement discussions and mediation.  The mediation session culminated in an agreement in principle to settle the Litigation for $2.65 million, which was memorialized in a memorandum of understanding executed on June 8, 2021 (the "MOU").

28.     On July 30, 2021, Lead Plaintiff filed a motion for preliminary approval of settlement.  (Dkt. Nos. 60-62).

29.     On August 18, 2021, the Court issued the Preliminary Approval Order. (Dkt. No. 66). The Court scheduled the Settlement Hearing for final approval of the Settlement, attorney's fees and expenses, Lead Plaintiff's compensatory award, and to hear any objections by Settlement Class Members for November 30, 2020, at 11:00 a.m.

30.     Thereafter, Aclaris and/or Defendants' insurers have paid $2.65 million into an escrow account for the Settlement Class's benefit, $200,000 of which is earmarked for Notice and Administration Expenses.

## III.    THE SETTLEMENT

### A.    Reasons for the Settlement

31.     Although Lead Plaintiff and Lead Counsel strongly believe that the claims asserted in this Action are meritorious and that the evidence developed to date supports them, they recognize and acknowledge the substantial expense and duration of continued proceedings that would be necessary to prosecute the Action. Lead Plaintiff and Lead Counsel are also mindful of the inherent difficulty of proving claims under the federal securities laws and the possible defenses to the claims asserted in this Action, as well as the uncertainties presented by complex litigation.

32.     If the Settling Parties did not agree to settle, they would have faced an expensive discovery process, class certification, and summary judgment briefing, and the risks of trial. A jury would have to determine numerous complex securities law issues and navigate battles of the experts regarding market efficiency, loss causation, damages, and other issues related to Defendants' liability. For example, a jury would have to determine: (i) whether Defendants made false or misleading statements or omissions; (ii) whether the alleged misrepresentations and omissions were material; (iii) whether Defendants acted with scienter; (iv) whether Aclaris Securities traded in an efficient market, entitling Lead Plaintiff to a presumption of reliance; and

8

(v) the artificial inflation of Aclaris Securities and how much of the price declines on the corrective disclosure dates alleged in the Complaint resulted from the alleged corrective disclosures. Any recovery would be very uncertain and, because of the near certainty of appeals, inevitably delayed by years.

33.    The scope of merits discovery and class certification discovery would be large given the length of the Class Period, evidence concerning price impact, and the complexity of the allegations in the Complaint. The parties would have had to incur substantial costs and engage in prolonged litigation through class certification, summary judgment, trial, and likely appeals. Discovery costs (including document production and hosting fees) would be significant. Lead Counsel would anticipate, given the complexities, reviewing at least tens of thousands of pages of documents, if not more, and taking many depositions.

34.    In addition to fact discovery, the Settling Parties would have to engage in expert discovery on the merits, class certification, reliance, loss causation, and damages, amongst other topics. The parties would present dueling experts and incur substantial costs (including for expert reports and testimony regarding market efficiency, price impact, loss causation, damages, and merits). Even assuming a favorable trial outcome, Defendants would likely appeal, further delaying any benefit to the Settlement Class. Moreover, even if a larger judgment were recoverable at trial, courts recognize that delay occasioned by trial, post-trial, and appellate processes greatly reduces the value of any award.

35.    Despite Lead Counsel's confidence, there are significant risks to proving liability and damages. Even though the Court indicated denied Defendants' motion to dismiss in significant part, Lead Plaintiff would still have to survive summary judgment and establish falsity, materiality, and scienter to a jury's satisfaction.

36.    In particular, Lead Plaintiff would need to prove that the FDA's March 2018 letter to Aclaris expressly warned Defendants that their DTC advertising omitted material information regarding the risks associated with ESKATA, misrepresented important risk information, or overstated ESKATA's efficacy, and that Aclaris decided to ignore the FDA's warning and, with knowledge that it was violating FDA regulations, use advertising that included representations that the FDA had identified as misleading. *See Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 1177505, at *16 (S.D.N.Y. Mar. 29, 2021). Plaintiff would also have to prove that Defendants misrepresented to investors that the DTC campaign complied with FDA regulations. Further, proving scienter for Defendants' alleged misstatements regarding the DTC campaign is notoriously difficult, risky and uncertain, and Defendants would undoubtedly strongly contest this issue.

37.    Defendants would also vigorously contest price impact at class certification. For example, Defendants would likely argue that there was no meaningful price impact during the earnings calls when Defendants made their allegedly misleading representations about the DTC campaign to investors, as well as argue that Aclaris's stock price did not decrease in any statistically meaningful way following the Untitled Letter's public disclosure in June 2019. While Lead Counsel believes Lead Plaintiff has strong arguments to rebut these and other contentions at class certification, there is a risk that his motion for class certification would be denied.  In addition, even assuming Lead Plaintiff could prove price impact, Defendants will strongly contest the amount of actual damages that the proposed class suffered based on price declines that occurred after the Untitled Letter was disclosed.

38.    In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Settlement Class.  Lead Counsel, having evaluated the substantial risk, time, and

expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is a very favorable result for the Settlement Class.

**B.    Settlement Terms**

39.    The Settlement provides the Settlement Class with $2.65 million in cash, which Lead Plaintiff estimates at 14% of estimated damages.

40.    Lead Plaintiff and Lead Counsel retained Stanford Consulting Group, Inc., which provides research, analysis, and expert testimony in complex business litigation, particularly securities class actions, to provide advice on potential damages in the Action.

41.    Together, they analyzed several damages scenarios based on the corrective disclosures alleged in the Complaint under multiple common trading models designed to reflect investor behavior.  Applying these methodologies to corrective disclosure dates that showed statistically significant price declines led to class-wide damages of approximately $18.9 million.

42.    In addition, Defendants contested the amount of class-wide damages available and disagreed with Lead Plaintiff's damage calculation, even putting aside arguments related to liability, loss causation, and price impact.  This challenge was based on issues concerning the amount of actual harm that members of the proposed Class could have suffered.  The Settlement therefore could represent an even higher percentage of total possible damages than it does under Lead Plaintiff's estimate.

43.    The $2.65 million Settlement amount is a highly favorable result that is well above the median settlement for similar securities class actions.  *See* Janeen McIntosh & Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review (NERA Jan. 25, 2021), at 20 (Fig. 16), 36 (Fig. 28) (showing the median settlement value in securities class actions in 2020 was just 1.7% of estimated damages, and for cases between 2012-

2020 the median settlement value ranged between only 1.6% and 2.5% of estimated damages);[2] Laarni T. Bulan, Ellen M. Ryan, & Laura E. Simmons, *Securities Class Action Settlements – 2018 Review and Analysis* (Cornerstone Research 2019), at 6 (Fig. 5) (between 2009-2017, the median settlement in securities class actions with simplified tiered damages ranging between $75-149 million and $150-249 million was approximately 5% and 4%, respectively, whereas the median settlement in 2018 for these ranges was approximately 4.9% and 9.4%, respectively; between 2009-2017, median settlement was approximately 5.1% of simplified tiered damages for all securities class actions and, in 2018, median settlement was approximately 6% for all securities class actions).[3]  In addition, the Settlement represents a much higher percentage of Defendants' damages estimate, which was substantially lower than Lead Plaintiff's estimate.

44.    Defendants have not admitted to any liability or any wrongdoing as part of the Settlement and adamantly maintain that they are not liable to the Settlement Class.

## IV.    THE COURT'S PRELIMINARY APPROVAL ORDER AND PLAINTIFF'S DISSEMINATION OF NOTICE

### A.    Preliminary Approval Order

45.    On August 18, 2021, the Court issued the Preliminary Approval Order (Dkt. No. 66).

46.    In the Preliminary Approval Order, the Court:

a)    preliminarily approved the Stipulation and the Settlement set forth therein, subject to further consideration at the Settlement Hearing;

---

[2] *See* https://www.nera.com/content/dam/nera/publications/2021/PUB_2020_Full-Year_Trends_012221.pdf.
[3] *See* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis.pdf.

b)    scheduled a Settlement Hearing for November 30, 2021, at 11:00 a.m., to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate and should be approved; whether a judgment as provided in the Stipulation should be entered; whether the proposed Plan of Allocation should be approved; and to determine any amount of fees and expenses that should be awarded to Lead Counsel and to Lead Plaintiff;

c)    appointed Strategic Claims Services ("SCS" or "Claims Administrator") to supervise and administer the notice procedure as well as the processing of claims;

d)    approved the form and content of the Notice of Proposed Settlement of Class Action ("Notice"), the Proof of Claim and Release form ("Proof of Claim"), and the Summary Notice;

e)    directed SCS to take all reasonable efforts to cause a copy of the Notice and Proof of Claim to be mailed by first-class mail to potential Settlement Class Members;

f)    directed copies of the Notice and Proof of Claim to be posted on a SCS website designated for the Action no later than September 8, 2021 (the "Notice Date");

g)    directed Counsel, through SCS, to cause the Summary Notice to be posted over *GlobeNewswire* and to be published in the national edition of *Investor's Business Daily* no later than fourteen (14) calendar days after the Notice Date;

h)    directed Counsel to serve on Defendants' counsel and file with the Court proof of such mailing and publication at least seven (7) calendar days prior to the Settlement Hearing;

i)    established procedures and deadlines for Settlement Class Members to object to the Settlement, Plan of Allocation, award of attorneys' fees, reimbursement of expenses, or award to Lead Plaintiff and to appear at the Settlement Hearing; and

j)    established procedures and deadlines for Settlement Class Members to submit Proofs of Claim or seek exclusion.

**B.    Notice**

47.    Attached hereto as Ex. 1 is a true and correct copy of the Evans Declaration,

which sets forth the efforts undertaken by SCS to mail the Notice and Proof of Claim to potential

Settlement Class Members, to publish the Summary Notice, and to establish the website and Internet notice.

48.     As detailed in the Evans Decl., SCS mailed or caused to be mailed a total of 9,021 Notice Packets through first-class mail to potential Settlement Class Members, brokers and other nominees.  The Summary Notice was published in the national edition of *Investor's Business Daily* on September 20, 2021 and posted over *GlobeNewswire* on September 20, 2021.

49.     Additionally, SCS posted the Notice Packet, the Preliminary Approval Order, and the Stipulation on SCS's website, www.strategicclaims.net.

50.     As required by Federal Rule of Civil Procedure 23, due process, and the PSLRA, 15 U.S.C. §78u-4(f)(7), the Notice: (a) described the nature of the Action; (b) included the definition of the Settlement Class; (c) set forth the Settlement Class' claims; (d) described the Settlement's terms; (e) described the Plan of Allocation; (f) disclosed that Lead Counsel intends to seek attorneys' fees of one-third (33.33%) of the Settlement Fund, plus reimbursement of expenses up to $150,000, and an award for Lead Plaintiff up to $10,000.00; (g) advised Settlement Class Members of the right to exclude themselves from the Settlement Class and the binding effect of not doing so; (h) provided the deadline and procedure for filing a proof of claim, opting-out of the Settlement, or opposing the Settlement, Plan of Allocation, award of attorneys' fees, reimbursement of expenses, or award to Lead Plaintiff; (i) provided the necessary information for any Settlement Class Member to examine the Court records should they so desire; (j) provided the date, time, and place of the Settlement Hearing; (k) summarized the reasons why the Settling Parties are proposing the Settlement; (l) provided the contact information for Lead Counsel; (m) provided instructions to securities brokers and other nominee

holders for forwarding the Notice to those persons for whom the nominees held shares in street name; and (n) stated the binding effect of a judgment on Settlement Class Members.

51.     The notice procedures set forth above satisfied federal due process because they more than adequately apprised the interested parties of the pendency of the Action and afforded them the opportunity to present their objections.

### C.     Reaction of the Class

52.     To date, neither Lead Counsel nor defense counsel has received any objection to the Settlement, the Plan of Allocation, the attorneys' fees award, the requested reimbursement of expenses, or the award to Lead Plaintiff from any Settlement Class Member, and they have received no requests for exclusion.

### D.     The Plan of Allocation

53.     Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Settlement Class Members who wish to participate in the Settlement must submit a Proof of Claim to SCS postmarked no later than seven (7) calendar days after the date of the Settlement Hearing.  All Settlement Class Members who wish to exclude themselves from the Settlement must file a request for exclusion by November 16, 2021.

54.     As set forth in the Notice, all Settlement Class Members who timely file a valid Proof of Claim form entitling him/her to a recovery of $10.00 or more will receive a distribution of the Settlement proceeds, after deduction of attorneys' fees, expenses, notice/administration expenses, Lead Plaintiff's award, and taxes incurred on interest income earned by the gross Settlement Fund.  The distribution will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice.

55.     The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic loss as a result of

Defendants' alleged fraud, as opposed to losses caused by market or industry factors not related to the alleged fraud.

56.    The Plan of Allocation was formulated by Lead Counsel, in consultation with a well-respected and experienced financial consultant, and was designed to ensure that the distribution of the Settlement Fund was fair and consistent with Lead Plaintiff's theory of the case, which asserted that there was a decline in the price of Aclaris shares reflecting a disclosure of the truth relating to the alleged misconduct and to ensure that the allocation comported with the federal securities laws, including principles of loss causation.

57.    The Plan of Allocation does not compensate losses resulting from "in and out" transactions—losses from sales made prior to revelation of truth.  *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

58.    Perhaps most importantly, the Plan of Allocation does not discriminate between Settlement Class Members in the same position, as each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund.

59.    Lead Counsel and their financial consultant determined that this was the fairest method of allocation of the Net Settlement Fund.

60.    As noted above, Lead Plaintiff retained Stanford Consulting Group, Inc., which has great expertise in the field, to provide advice on potential damages in the Action.

61.    A plaintiff incurs damages when purchasing a share at a price inflated as a result of false or misleading statements and/or omissions, provided that a later curative disclosure of that fraud causes the security price to decline.  Price inflation can be created by material misrepresentations and/or omissions on or before the purchase date, which remain uncorrected in

whole or in part at that date.  Damages are mitigated if the share is later sold, while the price remains inflated, so that the original purchaser receives at sale an offsetting "bonus" equal to the dollar amount of inflation remaining at the sale date.  Price inflation may be measured from changes in security prices, net of market, industry, and other non-fraud-related effects, when the true condition and prospects of the company are partially or fully disclosed; price inflation present at the purchase date may be estimated by measuring the portion of the price decline caused by a curative disclosure.

62.    The actual loss suffered by a Settlement Class Period purchaser (between May 8, 2018 and August 12, 2019, both dates inclusive) in this Action is can be observed as the portion of the Aclaris-specific price decline—net of market and industry effects—caused by the revelation of fraud on June 19, 2019, June 20, 2019, and August 8, 2019.  Accordingly, as demonstrated in the following table, if an Aclaris share of Common Stock was sold before June 19, 2019, the Recognized Loss for that security is $0.00, and any loss suffered is not compensable under the federal securities laws:

| Table 1 Artificial Inflation in Aclaris Common Stock | | |
|---|---|---|
| **From** | **To** | **Per Share Price Inflation**** |
| May 9, 2018 | June 19, 2019 | $0.62 |
| June 20, 2019 | June 20, 2019 | $0.50 |
| June 21, 2019 | August 8, 2019 | $0.07 |
| August 9, 2019 | Thereafter | $0.00 |

** Per-share price inflation shall not exceed the per-share purchase price for the stock.

63.    Furthermore, in accordance with the "Limitation on Damages" provisions of the PSLRA (15 U.S.C. §78u-4(e)), damages on a share purchased during the Settlement Class Period and held as of the close of the 90-day period subsequent to the Settlement Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for the

share and the average price of the share during the 90-Day Lookback Period. Damages on shares purchased during the Settlement Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for the share and the rolling average price of the share during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

64.     Additionally, under the U.S. Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005), damages are assessed only for shares purchased during the Settlement Class Period and retained through at least the first alleged curative disclosure—shares purchased during the Settlement Class Period and sold before the alleged curative disclosure do not incur damages.

65.     There have been no objections to the Plan of Allocation, which is set forth in the Notice. Lead Plaintiff respectfully submits that it is fair, reasonable, and adequate and should be approved by the Court.

## V.     LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSMENT OF EXPENSES

### A.     Attorneys' Fees

66.     Lead Counsel have represented the Settlement Class on a wholly contingent basis for approximately two years, not receiving any payment for their service or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement. Throughout this time, Lead Counsel's dedication to recovering a favorable result for the Settlement Class has been expensive and challenging.

67.     The Notice informed Settlement Class Members that Lead Counsel would apply for attorneys' fees in the amount of one-third (33.33%) of the Settlement Fund, plus

reimbursement of expenses up to $150,000, and an award to Lead Plaintiff up to $10,000.00 in total.

68.     Counsel requests that the Court award a fee of one-third (33.33%) of the Settlement Fund, or $833,333.33, plus accrued interest.

69.     As discussed in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiff filed concurrently herewith, the requested fee is within the range of reasonable fees awarded in common-fund cases.  The Order Awarding Attorneys' Fees & Reimbursement of Expenses from *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 03-CV-8284 (RWS) (S.D.N.Y. Dec. 6, 2006), referenced in Lead Plaintiff's Memorandum of Law, is submitted as Ex. 3 hereto.  The one-third (33.33%) fee is also strongly supported and should be approved based on the facts on this case, including the superb result achieved for the Settlement Class, the skill required, the quality of work performed, and the risk of pursuing claims on a contingency basis.

70.     As set forth in the Lodestar Report included as Ex. A to the Pomerantz Decl., Pomerantz has committed 509.92 hours to litigating this Action from the initial investigation to its resolution, which includes time spent on:

    a.  Preparing briefing in connection with the motion for appointment of lead plaintiff;

    b.  Retaining and working with investigators to locate and interview numerous confidential witnesses, who were former employees of Aclaris with knowledge of the events relevant to the allegations in the Complaint;

    c.  Reviewing and analyzing Aclaris's Settlement Class Period and pre- and post-Settlement Class Period SEC filings, annual reports, press releases, quarterly earnings calls, investment conference transcripts, and other public statements;

    d.  Thoroughly researching the securities laws and intricacies of Aclaris's business and online community;

e.  Conducting all work with a damages expert, including retaining and consulting with the expert and analyzing and exchanging write-ups at various phases of the litigation and during the mediation and settlement process;

f.  Preparing the detailed Complaint, including drafting such complaint and performing all legal and factual analysis, and expert consultation;

g.  Opposing Defendants' Motion to Dismiss the Complaint, which raised and evaluated numerous complex issues specific to the Action, and preparing for and participating in the telephonic hearing before the Court on these letters;

h.  Overseeing and conducting all mediation and settlement efforts, including, without limitation, drafting a mediation statement, participating in an all-day mediation session before mediator Jed D. Melnick of JAMS, making all presentations to the mediator, negotiating settlement with counsel for Defendants, and drafting and revising all settlement-related documents and court papers;

i.  Obtaining competing bids for claims-administration work related to the Settlement before selecting a competitive bidder to serve as Claims Administrator, and working with the Claims Administrator to effectuate notice and oversee the administration process;

j.  Securing the services of the Escrow Agent;

k.  Preparing the motion papers and related documents necessary to obtain preliminary approval of the Settlement and provide notice of the Settlement to Settlement Class Members; and

l.  Preparing the motion papers and related documents necessary to obtain final approval of the Settlement.

71.    Lead Counsel's expertise has been vital to obtaining this favorable result for the Settlement Class. As set forth in detail in Ex. C to Ex. 2 hereto, Pomerantz is a nationally-recognized class-action firm with extensive experience litigating and negotiating settlements as lead or co-Counsel in complex securities class actions.  Pomerantz has been appointed lead or co-lead counsel in many complex securities class actions and has recovered substantial sums for class members. Pomerantz has prosecuted hundreds of such cases to successful resolution in its 80-year history and obtained billions of dollars in compensation for class members.

72.    Based on the hours expended by Pomerantz and the current billing rates for the firm's professionals, the total lodestar is $361,550.50.[4]  The lodestar results in a multiplier of approximately 2.30, which is determined by dividing the $833,333.33 requested fee by the firms' $361,550.50 total lodestar.

73.    The Lodestar Report attached as Ex. A to the Pomerantz Decl. lists the amount of time spent by Pomerantz in the prosecution of this Action.  The firms' time is taken from daily time records regularly prepared and maintained in the ordinary course of business.

74.    The number of hours reasonably and necessarily spent by Pomerantz on this Action is 509.92.  Pomerantz's hourly billing rates for the professionals working on this Action ranged from $400.00 to $1,000.00.  The hourly rates for attorneys and professional staff at Pomerantz are the usual and customary rates charged for each individual in non-contingent matters and conform to industry practice.

75.    As set forth in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiff, a multiplier of 2.30 is within the typical range of a fair and reasonable award.

### B.    Costs and Expenses

76.    The expenses incurred in the prosecution of this Action are set forth in Exhibit B to the Pomerantz Decl. ("Expense Summary").  In total, Lead Counsel has incurred $55,255.76 in expenses.

77.    The Expense Summary lists the unreimbursed expenses that Lead Counsel reasonably and necessarily incurred in the prosecution of this Action.

---

[4] Excludes work on motion seeking attorneys' fees, reimbursement of expenses, and awards to Plaintiff.

78.     These expenses are reasonable in light of the pace and duration of this Action and were necessarily incurred for its successful resolution.

## VI.     AN AWARD TO THE LEAD PLAINTIFF IS WARRANTED

79.     The Notice advised Settlement Class Members that Lead Plaintiff would seek an award of no greater than $10,000.00.

80.     Lead Plaintiff seeks an award in the amount of only $10,000.00.  This award is justified in light of Lead Plaintiff's efforts and lost time overseeing the prosecution of the Action, as well as the negotiations leading to the Settlement.   In particular, Lead Plaintiff (a) communicated with Lead Counsel regarding the posture and progress of the case; (b) compiled his trading data and completed his certification in connection with his motion to be appointed Lead Plaintiff; (c) reviewed all of the significant pleadings and memoranda of law filed in the Action; (d) consulted with Lead Counsel regarding the settlement negotiations and mediation; and (e) evaluated and approved the proposed Settlement.  *See* Declaration of Robert Fulcher in Support of Lead Plaintiff's Unopposed Motions for (I) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and (II) Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiff, dated October 14, 2021, at ¶ 4, submitted as Ex. 4 hereto.

81.     Given the important contributions and the time and effort expended by Lead Plaintiff, the requested award is warranted and should be approved.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 26, 2021

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman