UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
:
LINDA ROSI, individually and on behalf of all others
similarly situated,                                                          :

:
                                               Plaintiff,                     :
:
                      -v-                                                      :
:
ACLARIS THERAPEUTICS, INC., et al.,                            :
:
                                               Defendants.               :
------------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/09/2021
```

19-cv-7118 (LJL)
19-cv-8284 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

　　　Lead plaintiff Robert Fulcher ("Lead Plaintiff," "Plaintiff," or "Fulcher") moves for final

approval of a class-action settlement in the amount of $2.65 million.  Specifically, Fulcher

moves for an order certifying a settlement class of all persons or entities that purchased or

otherwise acquired Aclaris Therapeutics, Inc. ("Aclaris" or "Company") securities between May

8, 2018 and August 12, 2019, inclusive; for final approval of the settlement for $2.65 million in

exchange for releases; for attorneys' fees and expenses; and for a service award[1] for named

plaintiff Fulcher.  Dkt. No. 67.  The settlement is approved, with modifications to the attorneys'

fee award and the service award.[2]

## BACKGROUND

　　　Plaintiff brings this action under Section 10(b) of the Securities Exchange Act of 1934

and Rule 10b-5 promulgated thereunder against Aclaris, a small physician-led biopharmaceutical

---

[1] Fulcher refers to an "incentive award," but the award he seeks is more properly referred to as a "service award."  The Court uses the latter locution throughout this opinion.

[2] Simultaneous with this opinion and order, the Court is approving the settlement of the parallel shareholder derivative action against the officers and directors of Aclaris.  *See Allred v. Walker et al*, 19-cv-10641 (S.D.N.Y.).

company headquartered in Wayne, Pennsylvania, and certain of its current or former officers ("Individual Defendants" and collectively with Aclaris, "Defendants").  The operative complaint alleges that Aclaris and the Individual Defendants violated Section 10(b) of the Exchange Act by making certain statements that Plaintiff alleges were false and misleading primarily about Aclaris's first FDA-approved product, ESKATA.  Plaintiff's allegations are more fully described in the Court's opinion and order granting in part and denying in part Defendants' motion to dismiss, familiarity with which is assumed.  Lead counsel is the law firm of Pomerantz LLP.

On March 29, 2021, the Court granted in part and denied in part Defendants' motion to dismiss the complaint for failure to state a claim and for failure to plead fraud with particularity. *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021).  In particular, the Court sustained the complaint to the extent it alleged fraud with respect to statements made by the Company in August and November 2018 touting its direct-to-consumer advertising campaign as the course of ESKATA's likely future success without revealing that the FDA had previously written the Company that it believed the marketing campaign was misleading and would attempt to enjoin it.  The Court rejected the remainder of Plaintiff's claims.

The proposed settlement provides for Aclaris or its insurers to pay $2.65 million into a settlement fund from which attorneys' fees will be paid to Plaintiff's counsel and a service award will be paid to Fulcher, both in amounts to be determined by the Court, and the remainder used to pay costs of administration or distributed to class member's based on a computation of their recognized loss.  In exchange, the lawsuit will be dismissed and class members who do not opt out of the settlement will be bound by a broad release of all claims arising out of or that are based upon or relate in any way to the purchase, acquisition, sale or ownership of Aclaris securities during the settlement class period.  Dkt. No. 62-1.

2

On August 18, 2021, the Court entered an order preliminarily approving the settlement and providing for notice.  Dkt. No. 66.  Among other things, the Court certified, solely for purposes of settlement, a settlement class consisting of all persons or entities that purchased or otherwise acquired Aclaris securities between May 8, 2018 and August 12, 2019, inclusive (the "Settlement Class Period").  *Id.*  The Court also preliminarily approved the settlement as being fair, reasonable, and adequate to the settlement class, subject to further consideration at the settlement hearing, approved the form and plan of notice, and scheduled a deadline for opt-outs and objections and for the final settlement hearing.  *Id.*

The settlement administrator sent 9,211 notice packages to potential settlement class members and their nominees.  No objections to the settlement have been received.  There has been only one opt-out.

## DISCUSSION

In addition to approval of the $2.65 million class-action settlement, lead counsel moves for a fees award of $833,333.33, which is 33.3% of the settlement fund.  Lead counsel also seeks reimbursement of $55,255.76 in out-of-pocket litigation expenses and a service award of $10,000 for class representative Fulcher to be paid from the settlement fund.

The Court first confirms its findings certifying the settlement class.  It then turns to the fairness, reasonableness, and adequacy of the proposed settlement.  Finally, it turns to the request for attorneys' fees and a service award.

## I.      Certification of the Settlement Class

In its order of August 18, 2021, the Court certified the settlement class under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  Dkt. No. 66.  The Court now confirms that ruling.

The settlement class satisfies the threshold requirements of Rule 23(a), including numerosity, commonality of questions of law and fact, whether the claims of the named plaintiffs are typical of the class, and whether the representative parties adequately represent the class's interest.  The Court finds that the class is so numerous that joinder of all members is impracticable.  There were more than 41.2 million shares of Aclaris common stock outstanding at the end of the Settlement Class Period and an average daily trading volume in the United States of 516,759 shares during the Settlement Class Period.  Dkt. No. 61 at 17.  The proposed class satisfies the requirement that its members have common questions of law and fact.  Common questions include whether Defendants' statements were false and material, whether they were misleading, whether Defendants acted with scienter, and transaction and loss causation.  *See, e.g.*, *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000).

The claims of Lead Plaintiff are typical of the claims that would be raised by all members of the class.  A plaintiff's claim is typical if it arises from "the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).  Fulcher's claim readily satisfies that test.  He purchased the same securities during the Settlement Class Period as members of the class whom he purports to represent, based on the same alleged misrepresentations.

The Court also finds that Fulcher has fairly and adequately protected the interests of the class, as required by Rule 23(a)(4).  There are no conflicts between him and members of the class, and he has zealously represented the interests of the class.

In addition to satisfying Rule 23(a), a class must also satisfy one of the requirements of Rule 23(b) in order to be certified. The settlement class satisfies Rule 23(b)(3)—common questions of law and fact predominate, and a class is superior to other available methods for fairly and efficiently adjudicating the matter, particularly given the current posture.

## II.      Approval of the Settlement

Rule 23(e) provides that "[t]he claims . . . of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Rule 23(e)(2) requires a court to make certain findings in order for a settlement to be binding on class members. A settlement may be approved only if it "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Rule 23(e)(2), as amended on December 1, 2018, provides that if a proposed settlement:

would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Id.* The Advisory Committee's notes on Rule 23(e)(2) state that the goal of the amendment "is not to displace any factor" previously adopted by any U.S. Court of Appeals, "but rather to focus

the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e)(2) advisory committee's notes to 2018 amendment.  The Advisory Committee explained that in certain jurisdictions, lengthy, multifactor tests risked distracting courts and parties from focusing on the key issues in a settlement review.  *Id.*

Most of the requirements set forth in the amendments to Rule 23(e)(2) have long been used in the nine-factor test adopted by *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  To evaluate the substantive fairness of a proposed settlement, *Grinnell* instructs a district court to consider "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (alteration in original) (quoting *Grinnell*, 495 F.2d at 463).  In conducting the review required by Rule 23(e), the Court has a duty "to make a considered and detailed assessment of the reasonableness of proposed settlements of class actions."  *Weinberger v. Kendrick*, 698 F.2d 61, 82 (2d Cir. 1982) (Friendly, J.).

The Court will first review the factors set forth by Rule 23(e)(2), and then address the additional *Grinnell* factors.  It finds that the settlement is fair, reasonable, and adequate.

**A.      Rule 23(e)(2)(A): Whether Class Representatives and Class Counsel Have Adequately Represented the Class**

Lead Plaintiff filed his initial complaint in September 2019 and filed and served the operative complaint on January 24, 2020, after the Court appointed him as Lead Plaintiff and Pomerantz as lead counsel.

Class counsel then defended against and achieved partial success with respect to a powerful motion to dismiss filed by Defendants.  The briefing and argument on the motion demonstrated command of both the facts and the law.

Thereafter, counsel prepared mediation statements, and on June 4, 2021, the parties participated in an all-day mediation which resulted in this settlement.  The work of lead counsel included consulting with a damages expert and hiring an investigator who uncovered confidential witnesses.  The class representative and class counsel have more than adequately represented the class.

**B.      Rule 23(e)(2)(B): Whether the Proposed Settlement Was Negotiated at Arm's Length**

As the Second Circuit has held, "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks omitted).  Here, the settlement was arrived at through arms-length negotiations.  The parties engaged in initial settlement negotiations that were not successful and reached a settlement only after participating in an all-day mediation session before a well-regarded and experienced mediator.

The Court concludes that the settlement was negotiated at arm's length, and that this factor weighs in favor of approving the proposed settlement.

### C.       Rule 23(e)(2)(C): Whether the Relief Provided to the Class Is Adequate

#### 1.       Rule 23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal

The costs, risks, and delay of trial and appeal in this case are significant.  If the parties did not settle, they would have faced an expensive discovery process, followed by class certification briefing, and probably summary judgment briefing, before trial.  There would have been significant risks to the plaintiff class at each stage.  The case presents complicated and difficult issues regarding, among other things, scienter, loss causation, and damages.  With respect to class certification, had the case progressed there would have been significant issues regarding price impact and the ability to certify a class.  And even assuming that Plaintiff developed enough information to survive summary judgment and to certify a class, the plaintiff class would have faced significant risks from a trial and—if the plaintiff class prevailed—from a likely appeal.  All of that would also have caused further delay.

For these reasons, the delay, expense, and risk of litigating this case through trial on the merits would have been significant, with no guarantee of recovery to the plaintiffs.  This weighs in favor of the proposed settlement.

#### 2.       Rule 23(e)(2)(C)(ii): Effectiveness of the Proposed Method of Distributing Relief to the Class

Under the proposed plan of allocation, the net settlement fund will be allocated pro rata to the Aclaris securities that the settlement covers based on the proportionate trading volume for those securities during the Settlement Class Period and on the difference between the amounts of estimated alleged artificial inflation in Aclaris securities on the purchase date and the amount of estimated alleged artificial inflation on the sale date.  The proposed method of distributing relief to the class is effective.

**3.      Rule 23(e)(2)(C)(iii): Terms of the Proposed Attorneys' Fees, Including Timing of Payment**

Plaintiff's counsel seeks attorneys' fees totaling 33.3% of the settlement fund, in the total amount of $833,333.33 and reimbursement of $55,255.76 in expenses.

In discussing the attorneys' fees application, the Court will describe in greater detail the attorneys' fees and the performance of counsel, and the appropriateness of the fees request.  As indicated below, the Court will modify the request slightly.  For the purposes of Rule 23(e), the proposed attorneys' fees are not an obstacle to the settlement.

**4.      Rule 23(e)(2)(C)(iv): Any Agreement Required to Be Identified Under Rule 23(e)(3)**

Rule 23(e)(3) states:  "The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3).

The parties have not identified any agreement other than the stipulation of settlement.

**D.      Rule 23(e)(2)(C): Whether the Proposal Treats Class Members Equitably Relative to Each Other**

The net settlement fund will be allocated to authorized claimants on a pro rata basis based on the relative size of their recognized losses.  The Court finds that the plan of allocation seeks to and does compensate members of the class equitably.

**E.      The Second Circuit's *Grinnell* Factors.**

The Advisory Committee's notes to Rule 23(e)(2) state that the goal of the recent amendments were not intended to displace any factor adopted by any court of appeals, and that the Second Circuit has long used the nine-factor *Grinnell* test to evaluate the substantive fairness of a proposed class action settlement.

The Court's discussion of the Rule 23(e) factors already addresses many of the *Grinnell* factors, including the complexity, expense and likely duration of the litigation; the stage of

proceedings and amount of discovery; and the risks of establishing liability and damages. The Court now addresses the remaining *Grinnell* factors.

### 1. The Reaction of the Class to the Settlement

The deadline for submitting objections to the settlement was November 9, 2021. The settlement administrator sent 9,211 notice packets. No objections were submitted to the settlement administrator or plaintiff's counsel, and no objections have been received by the Court. There has been only one exclusive request.

The reaction of the class weighs strongly in favor of the settlement. *See Wal-Mart Stores*, 396 F.3d at 119 ("[T]he favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in [the] *Grinnell* inquiry.").

### 2. The Size of Settlement in the Range of Possible Recovery

Lead counsel states that the settlement amount of $2.65 million represents a recovery of approximately 14% of recoverable damages, above the median settlements for similar securities class actions.

The Court finds that the $2.65 million figure represents a favorable result for the class.

### 3. The Risks of Maintaining the Class Action Through Trial

This factor also is favorable as to approval of the settlement. As indicated above, this case presented significant risks, including the risks of proving a misstatement, materiality, scienter, and loss causation. In addition, the case also presented significant risks that no class might be certified and that any damages award would be less than what is provided for under the settlement.

### 4. The Ability of Defendants to Withstand a Greater Judgment

The Court does not have any information on this factor. Regardless, "the defendants' ability to withstand a higher judgment . . . , standing alone, does not suggest that the settlement is

unfair." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).  This factor is afforded

minimal weight and is neutral toward the settlement.

     **F.**     **Notice to the Class**

Rule 23(c)(2)(B) requires potential class members to receive "the best notice that is

practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

Sarah Evans, a project manager of the settlement administrator, Strategic Claims Services

("SCS"), has submitted a declaration that describes the dissemination of notice to the class.  Dkt.

No. 71-1.  As of the date of the declaration, SCS mailed a total of 9,021 notice packets—sixty-

nine were mailed by first class mail to potential settlement class members included on the

transfer agent list and the remaining 8,952 notice packets were mailed to potential settlement

class members identified to the claims administrator by nominee account holders, institutional

groups, and other individuals.  *Id.* ¶ 7.  Out of the 9,021 notice packets mailed, 242 were returned

undeliverable.  *Id.* ¶ 8.  Of these, the U.S. Postal Service provided forwarding addresses for

forty-four, and SCS immediately mailed notice packets to the potential settlement class members

at those addresses.  *Id.*  The remaining 198 notice packets were skip-traced to obtain updated

addresses, and 112 new notice packets were mailed to updated addresses obtained through skip-

tracing.  *Id.*

In addition, the Depository Trust Company published a notice on its Legal Notice System

and, pursuant to the Court's preliminary approval order, notice of the settlement was published

once in Investor's Business Daily and once over Global Newswire.  *Id.* ¶¶ 9-10.

In addition, SCS maintains a toll-free number for potential class members to call and

obtain information about the settlement.  *Id.* ¶ 11.  To date, SCS received approximately five

telephone inquiries and two additional inquiries by email.  *Id.*

The Court concludes that the notice to the class satisfies Rule 23(c)(2)(B).

### G.     The Settlement Is Approved.

Having reviewed the factors set forth by Rule 23(e)(2) and the additional factors set forth in the Second Circuit's *Grinnell* decision, the Court concludes that the proposed settlement is fair, reasonable, and adequate.  It is therefore approved by the Court.

### III.   Approval of the Attorneys' Fees Application

Lead counsel seeks an attorneys' fees award of $833,333.33 plus interest, or 33.3% of the $2.65 settlement.  Lead counsel also seeks $55,255.76 in costs and expenses.

In reviewing a fee application in the class action context, the "court is 'to act as a fiduciary who must serve as a guardian of the rights of absent class members.'" *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) (quoting *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977)). The award "must reflect 'the actual effort made by the attorney to benefit the class.'" *Id.* (quoting *Grinnell*, 560 F.2d at 1099).

The Second Circuit provided substantial guidance to the district courts on common fund fee applications in *Goldberger v. Integrated Resources, Inc*., 209 F.3d 43 (2d Cir. 2000). *Goldberger* made plain that the district court has discretion to use either the lodestar or percentage in setting a fee award.  *Goldberger* lists certain factors that a court should weigh when reviewing an attorneys' fees application: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Id.* at 50 (quoting *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

*Goldberger* notes that "the lodestar remains useful as a baseline even if the percentage method is eventually chosen." *Id.* It serves "as a 'cross-check' on the reasonableness of the requested percentage." *Id.* "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)." *Id.* (citation omitted). The Second Circuit's 2007 opinion in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* moved analysis of attorneys' fees away from the concept of a "lodestar" in favor of a "presumptively reasonable fee." 522 F.3d 182, 183 (2d Cir. 2007). The reasonable hourly rate is "what a reasonable, paying client would be willing to pay." *Id.* at 184.

### A.   The Time and Labor Expended by Counsel

The first factor in determining the reasonableness of a fee request considers the time and labor expended by counsel. *Goldberger*, 209 F.3d at 50.

Lead counsel claims to have spent 506 hours of attorney time on this case and three hours of paralegal time. Dkt. No. 71-2, Ex. A. Lead counsel claims a lodestar amount of $361,550.50. *Id.* ¶ 4. Counsel spent extensive time on this case, including preparing briefing in connection with the motion for appointment of lead plaintiff, researching and preparing the complaint, working with an investigator and damages expert, preparing the opposition to the motion to dismiss, and overseeing and engaging in the settlement efforts.

The Court has independently reviewed counsel's time records. Counsel recorded over 271 hours researching, drafting, and filing the amended complaint and over 127 hours working on papers relating to the motion to dismiss. Approximately thirty hours were spent preparing for oral argument. Counsel billed only three hours for paralegal time because, as counsel explained at argument, the Pomerantz law firm only had one paralegal at the time. The attorney hours were

more than reasonably necessary for the prosecution of the case.  A more appropriate and reasonable figure, which would have allocated some of the hours to paralegals, would have been 2/3 of that amount, at most.  As the Court indicates below, it will reduce the lodestar value by 1/3 to account for attorney hours that were unnecessary.

### B.     The Magnitude, Complexities, and Risk of the Litigation

This factor raises strongly in favor of the requested fee award.  The case presented serious risks, and counsel and the class faced a real prospect of recovering nothing, both at the time counsel agreed to handle the case and then, had the case been litigated to conclusion, through trial and appeal.  As previously discussed, the magnitude, complexities, and risks of this litigation were significant, including the complications posed by COVID-19 and the difficulties of prosecuting and proving the claims for relief.  Chief Judge McMahon once described "the built-in risk of litigation" as "a highly relevant factor in determining the fee to be awarded." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007). *Goldberger* instructs that "contingency risk" "must" be considered in setting a reasonable fee. 209 F.3d at 53.  Plaintiff here faced a very serious motion to dismiss and survived it.

The magnitude, complexities, and risks of this case weigh in favor of the fee request.

### C.     The Quality of Representation

*Goldberger* states that quality of representation is best assessed by comparing the results of the settlement against plaintiffs' maximum possible recovery.  209 F.3d at 55.

The $2.65 million gross recovery for the settlement class returns approximately 14% of Lead Plaintiff's estimated damages.  Given the risks presented by the case, the Court views this as a favorable recovery for the class.

Plaintiff's counsel ably navigated the early procedural stages of this case, including briefing the motion to dismiss.

The experience of counsel is also relevant to deciding a fees award.  Pomerantz firm has extensive experience over decades representing plaintiffs in securities class actions, as their papers demonstrate.

It is also relevant to consider the quality of counsel representing defendants.  Defendants are represented by well-known law firms with significant resources: Mintz Levin and Katten Muchin Rosenman.

The Court concludes that the quality of representation in this case is high, and that it weighs in favor of the fee application.

### D.     The Requested Fee in Relation to the Settlement

Class counsel's proposed fee award constitutes 33.3% of the total recovery.  "District courts in the Second Circuit routinely award fees upward of 25% in securities and other complex litigation settlements of comparable size." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019).  33.3% is towards the high end.  A more reasonable figure would be 30%.  Typically, courts have awarded a 33.3% fee in cases of exceptional complexity and difficulty, or in which counsel has achieved an exceptional result.  *See, e.g.*, *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 371-72 (S.D.N.Y. 2002) (awarding 33.3% in case in which counsel opposed "six separate motions to dismiss," engaged in "numerous settlement discussions," and confronted "factual difficulties of a possible bankruptcy and insurance company disclaimer"); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding 33.3% in "factually and legally complex" case in which counsel achieved "a superb result for the class").  30% is sufficient in light of the still-considerable legal and factual complexities of the case and is a common fee award in similar actions in the Second Circuit. *See, e.g.*, *In re Beacon Associated Litigation*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013) ("In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of

the amount of the common fund."); *In re Priceline.com, Inc. Securities Litigation*, 2007 WL

2115592, at *5 (D. Conn. Jul. 20, 2007) (awarding 30%); *In re Oxford Health Plans*, 2003 U.S.

Dist. LEXIS 26795, at *13-14 (S.D.N.Y. June 21, 2003) (awarding 28%).

E.     **Public Policy Considerations**

Courts have recognized a public policy benefit in rewarding attorneys that bring

successful securities actions that foster the enforcement of the federal securities laws.  Public

policy supports an attorneys' fees award in this case.

F.     **Reaction of the Class**

As noted, there have been no objections submitted by members of the class to the terms

of the settlement, and only one request for exclusion from the class.  The absence of objections

and the singular request for exclusion weighs in favor of the fee application.

G.     **Lodestar Cross-Check**

*Goldberger* states that the lodestar can be used as a useful cross-check on the

reasonableness of counsel's fee request.

As already stated, on a fees award of 33.3%, or $833,333.33, and accepting counsel's

hours, the lodestar multiplier in this case would be 2.3, based on a lodestar value of $361,550.50

for 506 hours of attorney work and three hours of paralegal work.

The Court has concluded, however, that a more appropriate and reasonable lodestar value

would be $241,033.67 (or 2/3 of $361,550.50).  Were that number to be used with respect to the

fee request for $833,333.33, the lodestar multiplier would be 3.457, a figure that is too high

given the risks and complexities of the case and the other *Goldberger* factors.  Applying the

lodestar value of $241,033.67 to the figure that is 30% of the settlement fund of $2.65 million (or

$795,000) yields a lodestar multiplier of 3.3.  That figure is well within the range for securities

actions of comparable complexity, magnitude and risk.  *See Christine Asia*, 2019 WL 5257534, at *19.

### H.      Counsel's Fee Application Is Approved, with Modification

Having reviewed the *Goldberger* factors and cross-checked the percentage fee against the lodestar, the Court concludes that a fee award of $795,000—amounting to 30% of the class recovery, and a lodestar multiplier of approximately 3.3—is reasonable and reflects the efforts actually and reasonably performed by counsel.

### I.      Attorney Expenses

Plaintiff's counsel also seeks the reimbursement of $55,255.76 in expenses.  "[A]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Bear Stearns Cos., Inc. Sec. Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012).

Of the expenses, $3,755.99 relates to computer research, $19,342.88 is for expert fees, $15,245.65 is for investigator fees, and $12,158 is for mediator fees.  Those are all reasonable.

The following are not reasonable, not supported, and will not be reimbursed: $250.63 for meals for one of the attorneys, $600.60 for clerical overtime, and $642.18 for cabs for one of the attorneys.  In addition, counsel bills the class $193.40 for in-house copying.  There is no per page support for that figure.  The Court will cut it in half to $96.70.

The Court will award $53,665.65 for reasonable costs and expenses.

## IV.   Service Award to Lead Plaintiff

The Lead Plaintiff seeks a service award of $10,000 to be paid out of the settlement funds.

The Court's authority to grant a service award is addressed and limited by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  The PSLRA provides:  "The share of any

final judgment or of any settlement that is awarded to a representative party serving on behalf of

a class shall be equal, on a per share basis, to the portion of the final judgment or settlement

awarded to all other members of the class." 15 U.S.C. § 78u-4(a)(4). It also states that

"[n]othing in this paragraph shall be construed to limit the award of reasonable costs and

expenses (including lost wages) directly relating to the representation of the class to any

representative party serving on behalf of a class." *Id.*; *see In re Veeco Instruments Inc. Sec.

Litig.*, 2007 WL 4115808, at *12 (S.D.N.Y. Nov. 7, 2007) (same). The provision "limits the lead

plaintiff's recovery by restricting 'bounty payments.'" Michael A. Perino, *Securities Litigation

Under the PSLRA* § 2.06 (2015). The courts have discretion to reimburse the lead plaintiff for

reasonable costs and expenses for "court appearances or other duties involving time away from

work." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 369 (E.D.N.Y. Feb. 12, 2010)

(quoting S. Rep. No. 104-98, at 10 (June 19, 1995)) (approving very limited award of $1,500 to

each of four lead plaintiffs who made their experience available to counsel, participated in

discovery, and attended court hearings in connection with $50 million overall settlement).

Service awards "reimburse the named plaintiffs for expenses incurred through their involvement

with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain

involved in the litigation and to incur such expenses in the first place." *In re Veeco Instruments

Inc. Sec. Litig.*, 2007 WL 4115808, at *12 (quoting *Hicks v. Stanley*, 2005 WL 2757792, at *10

(S.D.N.Y. Oct. 24, 2005)).

At the same time, because service awards are paid out of a common fund and thereby

decrease the recovery of the absent class members, "[p]ayments to class representatives . . .

should be closely scrutinized." *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435

(S.D.N.Y. 2007). In addition, "[i]f class representatives expect routinely to receive special

awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989). "A balance must be struck so that a class representative does not view his prospect for rewards as materially different from other members of the class, yet is not disadvantaged by his service in pursuing worthy claims." *Silberblatt*, 524 F. Supp. 2d at 435. In particular, the Second Circuit has approved the practice by which lead plaintiffs submit a "thorough accounting of hours dedicated to the litigation and a statement that these hours constituted lost work time." *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014); *see also Oklahoma Firefighters Pension and Ret. System v. Lexmark Intl., Inc.*, 2021 WL 76328, at *7 (S.D.N.Y. Jan. 7, 2021); *In re Virtus Investment Partners, Inc. Securities Litigation*, 2018 WL 6333657, at *5 (S.D.N.Y. Dec. 4, 2018).

Fulcher is the Head of Sales for a small independent business. Dkt. No. 75-3 ¶ 4; Dkt. No. 71-4 ¶ 6. He is a salaried employee who estimates that his effectively hourly rate is $205 an hour. Dkt. No. 75-3 ¶ 4. In his application to be lead plaintiff, his counsel reported that Fulcher purchased 6,400 shares of Aclaris securities during the Settlement Class Period and incurred $22,521 in losses. Dkt No. 11-1; Dkt. No. 11-3. In his declaration in support of the request for a service award, he estimates that he spent seventy-five hours in his efforts overseeing the prosecution of the action. Dkt. No. 75-3 ¶ 4. He estimates that he spent 21.5 hours in August and September 2019 preparing his complaint and speaking to counsel. *Id.* ¶ 6(a), (b). Those hours were spent before Fulcher was appointed lead plaintiff and before a class was certified. He spent eight hours in January 2020 reviewing the amended complaint. *Id.* ¶ 6(c). In the months of April 2020, June 2020, and August 2020, he spent a total of 12.5 hours reviewing the various

memoranda submitted in connection with the motion to dismiss.  *Id.* ¶ 6(d)-(f).  In November

2020, he spent half an hour communicating with lead counsel regarding the status of the action.

*Id.* ¶ 6(g).  For the months from March 2021 when the Court issued its decision on the motion to

dismiss until June 2021 when the case was settled, Fulcher estimates he spent 23.5 hours on the

case; only five of those hours were spent in May and June 2021, the months the case was settled.

*Id.* ¶ 6(h)-(k).  His only notations with respect to that time are "reviewing documents and

communicating with Lead Counsel regarding the status of this Action," *id.* ¶ 6(h)-(i), or

"reviewing documents, including my transaction records and publicly available documents, and

communicating with Lead Counsel regarding the status of this Action," *id.* ¶ 6(j)-(k).  His

declaration contains the estimate that he spent nine hours on the action, after the case was settled,

in the months of July 2021, August 2021, and October 2021.  *Id.* ¶ 6(l)-(n).  Eight of those hours

include time for reviewing his transaction records.  *Id.* ¶ 6(m)-(n).

Fulcher does not submit any documentary evidence supporting the time he claims he

spent on the action or assert that the time he spent on the action constituted lost work time.  He

states that he "did not keep diaries, timesheets, or records documenting the time that [he] spent

overseeing the prosecution of this Action."  *Id.* ¶ 5.[3]  He also does not submit any evidence of

costs or expenses or of foregone income as a result of his service.  He did not travel to any court

hearings or to the mediation or to visit with counsel.  He also did not participate in the court

hearings or the mediation, which were held remotely.  He was not deposed; he did not produce

---

[3] The Second Circuit requires counsel who seeks an attorneys' fee award to be paid out of class
funds to submit contemporaneous time records.  *See Scott v. City of New York*, 626 F.3d 130, 133
(S.D.N.Y. 2010) (invoking the "strict rule" that attorneys must submit contemporaneous time
records with fee applications) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136, 1148 (2d Cir. 1983)).  That requirement serves to ensure that the time to be
charged to the class was both actually spent and reasonably spent.  *Carey*, 711 F.2d at 1148.

documents or answer interrogatories; and he did not participate in any discovery.  There is no evidence of lost wages or commissions or that he received less in salary as a result of his service as lead plaintiff than he would have received had he not assumed the responsibilities as lead plaintiff.  *See In re Bank of Am. Litig.*, 772 F.3d at 133.

Under the PSLRA, Fulcher is entitled to a nominal service award in recognition of the work he did perform in staying in contact with lead counsel and in participating in discussions regarding the case.  The Court is prepared to assume that some of the time Fulcher spent on the action in the months of August and September before he was appointed lead plaintiff were "directly relat[ed] to the representation of the class."  15 U.S.C. § 78u-4(a)(4).  There is no logical reason why it should not be considered directly related to the representation of the class.  A putative class representative who incurs costs and expenses in the preparation of an amended class action complaint surely is eligible for reimbursement under the PSLRA even if no class has yet been certified and, to that extent, does not exist.  There is no necessary reason why a person who incurs expenses and costs on behalf of the class in reasonable anticipation that he will be appointed class representative should be deprived of reimbursement.  Still, there is little evidence that anything other than an extremely small portion of the hours Fulcher spent in August and September were directly related to work on behalf of the class.  Time that Fulcher spent in the spring and summer of 2020 reviewing the memoranda relating to the motion to dismiss and in the month of June 2021 when the case was settled are related to the representation of the class.  There is no evidence, however, that Fulcher contributed any specialized knowledge to the prosecution of the case.  *Cf. In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 369 (noting that two of the lead plaintiffs "had insurance industry or actuarial experience and made that experience available to counsel").  The motions were directed to the legal sufficiency of the

pleadings; they did not require particular knowledge of the underlying facts.  There is no evidence that after March 2021 anything but the approximately five hours spent in the month of June 2021 were directly related to the representation of the class.  Surely, Fulcher is not entitled to charge the class for time spent reviewing his own personal records in anticipation of the claim he would submit in the settlement.

In short, Fulcher has done a bit more than "lend a name" to the lawsuit, *id.* at 370, but "[m]ost of the work described is that which any person undertaking the task of class representative ought to expect and should not be compensated out of class funds," *Silberblatt*, 524 F. Supp. 2d at 436.

This is not a case in which Lead Plaintiff took any personal risk in bringing suit and assuming the responsibilities of class representative.  *Cf. Henry v. Little Mint, Inc.*, 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014) ("In a wages and hours case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate."); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery."); *Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791, 809 (S.D.N.Y. 2020) (service awards may be appropriate in FLSA cases).  Fulcher is an individual investor who

alleges he lost $22,251 as a result of Defendants' alleged fraud; he suffered no personal risk in bringing this lawsuit to recover his alleged damages.

Accordingly, the Court will award Fulcher only a nominal service award of $1,000.  Any greater award would be unfair to the class he represents.

## CONCLUSION

The settlement is approved with the following modifications.  Counsel is awarded $795,000 in attorneys' fees and $53,665.65 in costs and expenses.  Lead Plaintiff Fulcher is granted a service award of $1,000.

The Clerk of Court is respectfully directed to close Dkt. Nos. 67 and 69 and to close the case.  The Clerk of Court is also respectfully directed to close member case 19-cv-8284, *Fulcher v. Aclaris Therapeutics, Inc. et al*.


SO ORDERED.

Dated: December 9, 2021
       New York, New York                    _____
                                                  LEWIS J. LIMAN
                                             United States District Judge